UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

| | |
|---|---|
| MARK JOHN CARNEY,<br><br>    Petitioner,<br><br>v.<br><br>JOAN FABIAN,<br>Commissioner of Corrections,<br><br>    Respondent. | Civil No. 05-538 (RHK/JSM)<br><br>**REPORT AND RECOMMENDATION** |

Deborah Ellis, 700 Saint Paul Building, Six West Fifth Street, Saint Paul, Minnesota, 55102, for Petitioner.

Kimberly Parker, Kimberly Parker, Assistant Minnesota Attorney General, Suite 1800, 445 Minnesota Street, St. Paul, Minnesota, 55101, for Respondent.

JANIE S. MAYERON, United States Magistrate Judge

This matter is before the undersigned Magistrate Judge of the District Court on the petition of Mark John Carney, for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Respondent has filed a response, (Docket Nos. 11-13), contending that the petition should be dismissed, and Petitioner has filed a reply to that response, (Docket 15).

The matter has been referred to this Court for report and recommendation under 28 U.S.C. § 636 and Local Rule 72.1. For the reasons discussed below, the Court concludes that Petitioner's habeas corpus petition should be DENIED, and this action should be DISMISSED WITH PREJUDICE.

**I. BACKGROUND**

In March 2001, Petitioner was convicted of first degree murder in the state district court for Clay County, Minnesota. He was sentenced to life in prison, and he is presently serving his sentence at an undisclosed location.

Petitioner was convicted for killing John Voeller, a man who had been having an affair with Petitioner's wife, Sheila. Voeller and Sheila worked for the same company, and they developed a close relationship beginning in January 2000. At some point, Petitioner began to see their relationship as a threat to his marriage. He had previously suffered from some form of depression, and had briefly taken anti-depressants in 1999, but his mental condition worsened as his concerns about his marriage increased during the spring of 2000.

One night in May 2000, Sheila went out to a bar with friends and did not come home. Shortly thereafter, Petitioner began taking a new anti-depressant. During June and July of 2000, Sheila's relationship with Voeller intensified, and Petitioner was sometimes staying with relatives, rather than at home. Sheila denied that her relationship with Voeller was a factor in the marital difficulties that she and Petitioner were experiencing, but as the summer of 2000 progressed, there was mounting evidence that Sheila and Voeller were having an affair. Petitioner was distraught, and threatened to commit suicide on at least one occasion. He once confronted Voeller and punched him. Voeller responded by expressing contempt for Petitioner, calling him "fat boy."

Petitioner's spirits were temporarily lifted on August 16, 2000, because he and Sheila spent time together that morning that included physical intimacy. Later that day, however, Petitioner decided to tap Sheila's telephone, in order to find out what was really going on between her and Voeller. When Sheila talked to Voeller on the phone that night, their conversation was recorded. They talked about plans to spend an upcoming weekend together; they talked about buying some liquor that would make Sheila "crazy;" and they talked about Petitioner rather scornfully. Their conversation was interrupted by an incoming call from Petitioner, who apparently did not know that Sheila was talking to Voeller. After

a very brief and somewhat brusque discussion with Petitioner, Sheila returned to her conversation with Voeller. That conversation ended a short time later, with Sheila saying "love you," and Voeller responding "love you too."

The following morning, Petitioner picked up the tape of the previous evening's conversations, and listened to it while he drove to work. The tape was emotionally devastating to Petitioner, as it seemed to confirm his worst fears about Sheila's relationship with Voeller. After hearing the tape, Petitioner decided not to go to work. He drove around, visited his mother and uncle, and contemplated suicide. At some point during that day, he picked up a shotgun that he owned, and sawed off the barrel of the gun so he could conceal it more easily.

Petitioner drove to a store where Voeller was working. He parked his car, walked into the building, and saw Voeller. He then turned away from Voeller, and said "I'm sorry." Voeller responded by saying "you should be." Petitioner then turned back to Voeller, and shot him in the back of the head. After Voeller fell to the floor, Petitioner walked over to him and said "that's for sleeping with my wife." He then reloaded the shotgun and shot Voeller in the face. Voeller died of his wounds.

A witness to the shooting called 911, and the police located Petitioner while he was driving away in his truck. After a high speed chase, and a two-hour stand-off, Petitioner surrendered. He was later charged with first-degree murder.

Petitioner never denied that he had killed Voeller, but he claimed that the murder was not premeditated. He asked the trial court judge to give the jury an instruction on the lesser included offense of first-degree heat-of-passion manslaughter. That motion, however, was denied, and the jury ultimately found Petitioner guilty of first-degree murder.

Petitioner challenged his conviction in a direct appeal taken to the Minnesota Supreme Court.[1]  He claimed that the trial court judge had misapplied Minnesota law by refusing to give the jury an instruction on heat-of-passion manslaughter.  (He also claimed that the trial court judge made two erroneous evidentiary rulings, which are not relevant here.)  The Supreme Court rejected Petitioner's arguments and affirmed his first-degree murder conviction.  State v. Carney, 649 N.W.2d 455 (Minn. 2002), [hereafter "Carney I"].

In November 2003, Petitioner filed a post-conviction motion in the trial court, which raised several new challenges to his conviction.  Most notably, Petitioner claimed that he had been deprived of his constitutional right to effective assistance of counsel at trial, because his lawyer allegedly failed to investigate whether Petitioner might have been able to present a viable defense based on his mental condition when he shot Voeller.  Petitioner contended that his trial counsel should have sought further medical expertise, in order to determine whether Petitioner was suffering from a mental illness or drug reaction that might have affected his state of mind at the time of the murder.[2]

The trial court denied Petitioner's post-conviction motion based on a state procedural rule known as the "Knaffla rule," which was promulgated by the Minnesota Supreme Court in State v. Knaffla, 309 Minn. 246, 243 N.W.2d 737 (Minn. 1976).  The Knaffla rule states that if a criminal defendant has previously taken a direct appeal, "all matters raised therein, and all claims known but not raised, will not be considered upon a subsequent petition for

---

[1] Under Minnesota law, appeals in first degree murder cases are taken directly to the State Supreme Court, rather than the Minnesota Court of Appeals.  Minn.Stat. § 632.14.

[2] Petitioner's attorney did consult a doctor of pharmacy to determine whether Petitioner's state of mind at the time of the shooting might have been affected by the anti-depressants he had taken.  However, the doctor's opinion on that subject was not helpful to Petitioner's defense.

postconviction relief." Id. at 252, 243 N.W.2d at 741.  The trial court concluded that Petitioner's ineffective assistance of counsel claims could have been raised in his direct appeal, and his post-conviction motion was therefore denied pursuant to the Knaffla rule.[3]

Petitioner appealed the trial court's ruling on his post-conviction motion, but the ruling was affirmed.  The Minnesota Supreme Court agreed that Petitioner's ineffective assistance of counsel claims were procedurally barred by the Knaffla rule.  Carney v. State of Minnesota, 692 N.W.2d 888 (Minn. 2005), [hereafter "Carney II"].

Petitioner is now seeking federal habeas corpus review of his conviction, citing two grounds for relief.  First, Petitioner claims that he was deprived of his constitutional right to due process, because the trial court refused to give the jury an instruction on the lesser included offense of heat-of-passion manslaughter.  Second, he claims that he received ineffective assistance of counsel, for the reasons advanced in his state post-conviction motion.  Respondent contends that both of Petitioner's current habeas corpus claims are procedurally barred.  The Court agrees.

## II. DISCUSSION

Federal habeas corpus review of a state criminal conviction is available only for claims involving federal constitutional issues.  The United States Supreme Court has repeatedly held that "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.  In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, law or treaties of the United States."  Estelle v. McGuire, 502 U.S. 62, 67 (1991).  See also Wainwright v.

---

[3] The trial court also found that even if Petitioner's ineffective assistance claims had not been procedurally barred, his post-conviction still would have been denied, because his claims were substantively without merit.

5

Goode, 464 U.S. 78, 83 (1983) (per curiam) ("[i]t is axiomatic that federal courts may intervene in the state judicial process only to correct wrongs of a constitutional dimension").

It is also well-established that a state prisoner cannot raise any federal constitutional claim for the first time in a federal habeas corpus petition. A federal constitutional claim is reviewable in a federal habeas corpus proceeding only if that claim has already been fairly presented to, and decided on the merits by, the highest available state court. The United States Supreme Court has explained this requirement as follows:

> "Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies, 28 U.S.C. § 2254(b)(1), thereby giving the State the 'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights.'... [Citations omitted.] To provide the State with the necessary 'opportunity,' the prisoner must 'fairly present' his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim. [Citations omitted]."

Baldwin v. Reese, 541 U.S. 27, 29 (2004). See also O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999) ("[b]ecause the exhaustion doctrine is designed to give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts,... state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process").

A state prisoner seeking federal habeas relief is not required to have spelled out every nuance of his federal constitutional claims to the state courts, but he does have to give the state courts fair notice that there is indeed a federal constitutional dimension to his claims. "If state courts are to be given the opportunity to correct alleged violations of prisoners' federal rights, they must surely be alerted to the fact that the prisoners are asserting claims under the United States Constitution." Duncan v. Henry, 513 U.S. 364,

6

365-66 (1995) (per curiam).

When a state appellate court expressly declines to address a particular claim on the merits because the claim was not raised in accordance with applicable state procedural rules, the claim has not been fairly presented to the state courts, and it is then treated as a "procedurally defaulted" claim for federal habeas corpus purposes. As the Eighth Circuit Court of Appeals explained in Hall v. Delo, 41 F.3d 1248, 1250 (8th Cir. 1994), "[a] federal claim has not been fairly presented to the state courts," and is therefore procedurally defaulted, "when the state court has declined to decide the federal claim on the merits because the petitioner violated a state procedural rule." See also McCall v. Benson, 114 F.3d 754, 757 (8th Cir. 1997) ("a federal court may usually only consider 'those claims which the petitioner has presented to the state courts in accordance with state procedural rules'"), quoting Abdullah v. Groose, 75 F.3d 408, 411 (8th Cir.), cert. denied, 517 U.S. 1215 (1996); Satter v. Leapley, 977 F.2d 1259, 1261 (8th Cir. 1992) (same).

A claim that has been procedurally defaulted in the state courts will not be entertained in a federal habeas corpus proceeding, unless the petitioner has shown "cause and prejudice" to excuse his procedural default, or, in the alternative, that there would be a "fundamental miscarriage of justice" if the federal court declined to consider the claim. Coleman v. Thompson, 501 U.S. 722, 750 (1991). The "fundamental miscarriage of justice" exception is available only upon a "showing, based on new evidence, that 'a constitutional violation has probably resulted in the conviction of one who is actually innocent.'" Brownlow v. Groose, 66 F.3d 997, 999 (8th Cir. 1995), cert. denied, 516 U.S. 1161 (1996), quoting Schlup v. Delo, 513 U.S. 298, 327 (1995) (emphasis added). In other words, the petitioner cannot simply point to errors that allegedly occurred during the course of his criminal prosecution; he must instead offer some new evidence which affirmatively

7

demonstrates that he must truly be innocent of the crime for which he was convicted.[4]

The rules governing procedural default have been summarized by the United States Supreme Court as follows:

> "In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violations of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice."

Coleman, 501 U.S. at 750.

### A. Petitioner's Jury Instruction Claim

Petitioner's first claim for relief – -, that he was denied due process because the trial court refused to instruct the jury on a lesser-included offense – cannot be considered on the merits in this federal habeas corpus proceeding, because that claim has not been fairly presented to the Minnesota Supreme Court. Petitioner obviously did challenge the trial court's ruling on the jury instruction issue in his direct appeal to the Minnesota Supreme

---

[4] As explained by our Court of Appeals --

"The actual innocence exception is concerned with claims of actual, not legal innocence. Anderson v. United States, 25 F.3d 704, 707 (8th Cir. 1994). It is evidence of factual innocence coupled with a constitutional violation which triggers the actual innocence exception. Indeed, a credible claim of actual innocence 'requires [a] petitioner to support his allegation of constitutional error with new reliable evidence....' [Schlup, 513 U.S. at 324.] Examples of evidence which may establish factual innocence include credible declarations of guilt by another, see Sawyer v. Whitley, 505 U.S. 333, 340... (1992), trustworthy eyewitness accounts, see Schlup, 513 U.S. [at 324]... and exculpatory scientific evidence."

Pitts v. Norris, 85 F.3d 348, 350-51 (8th Cir.), cert. denied, 519 U.S. 972 (1996). For purposes of showing actual innocence, "'evidence is new only if it was not available at trial and could not have been discovered earlier through the exercise of due diligence.'" Johnson v. Norris, 170 F.3d 816, 817 (8th Cir. 1999), quoting Armine v. Bowersox, 128 F.3d 1222, 1230 (8th Cir. 1997) (en banc), cert. denied, 523 U.S. 1123 (1998).

Court, but he did not challenge the constitutionality of that ruling, as he is now attempting to do here. In his state court appeal, Petitioner contended only that the trial court misapplied Minnesota's state statutes and case law by failing to give the jury a lesser-included offense instruction on heat-of-passion manslaughter. Petitioner did not raise a constitutional due process claim in his direct appeal. His brief did not mention the federal Constitution; it did not mention the Fourteenth Amendment, (which contains the due process clause); and it did not mention the term "due process." Nor did Petitioner cite any federal case law that would have clearly apprised the Minnesota Supreme Court that he was raising a due process claim. In short, if Petitioner intended to challenge the constitutionality of the instructions given to the jury, he did not fairly present that challenge to the State Supreme Court.

Petitioner contends that he did preserve his jury instruction claim for federal habeas review, because the state-law arguments that he presented to the Minnesota Supreme Court are similar to the due process arguments that he is attempting to present here. However, the United States Supreme Court has expressly held that "[i]t is not enough that all the facts necessary to support the federal claim were before the state courts... or that a somewhat similar state-law claim was made." Anderson v. Harless, 459 U.S. 4, 7 (1982).

The Eighth Circuit Court of Appeals has likewise held, clearly and repeatedly, that a federal constitutional claim cannot be raised for the first time in a federal habeas corpus action, even if it is similar to a state-law claim that was previously raised in the state courts. "Even if state law 'bears some relation to' federal constitutional requirements, 'habeas petitioners must have explicitly cited to the United States Constitution or federal case law in their direct [state court] appeal to preserve federal review.'" Morris v. Norris, 83 F.3d 268, 270 (8th Cir. 1996), quoting Luton v. Grandison, 44 F.3d 626, 628 (8th Cir. 1994), cert.

9

denied, 513 U.S. 1195 (1995).  See also McCall, 114 F.3d at 757 ("[m]ere similarity between the state claims and the federal habeas claims is insufficient"), cert. denied, 517 U.S. 1172 (1996); Wyldes v. Hundley, 69 F.3d 247, 251 (8th Cir. 1995) ("[a]t a minimum,... the petitioner during direct appeal must have explicitly referred the state courts to the United States Constitution or federal case law"); McDougald v. Lockhart, 942 F.2d 508, 510 (8th Cir. 1991) ("[e]xplicit citation to the Constitution or to a federal case is necessary for fair presentation of a constitutional claim in state court").

Petitioner further contends that his due process jury instruction claim was preserved for federal habeas review, because he raised it in a pretrial memorandum filed in the trial court before he filed his direct appeal.  ("Petitioner's Response To Respondent's Memorandum In Opposition Of Petition Under 28 U.S.C. § 2254," [Docket No. 15], p. 2.) That argument fails, however, because Petitioner did not present that same constitutional issue to the Minnesota Supreme Court in his direct appeal; and it cannot simply be assumed that a state's highest court has considered every claim that was previously raised in the lower courts.  Baldwin, 541 U.S. at 31.

Petitioner also argues that the trial court, in the post-conviction proceedings, implicitly acknowledged that his constitutional argument had been raised on direct appeal. In his post-conviction motion, Petitioner claimed that he "was denied due process and fundamental fairness, in violation of protections afforded him under the Minnesota and federal constitutions, when the trial court failed to give a jury instruction in support of Petitioner's theory of defense."  ("Petition For Postconviction Relief," Attachment 1 to Petitioner's Memorandum, [Docket No. 8], p. 4, ¶ 9.)  The trial court addressed this conclusory assertion with the conclusory response that "the Minnesota Supreme court already heard the Petitioner's challenge to jury instructions, and affirmed the conviction."

("Findings of Fact, Conclusions of Law, and Order," Attachment 3 to Petitioner's Memorandum, [Docket No. 8], p. 4, ¶ 8.) This unexplained statement by the trial court does not somehow prove that the Minnesota Supreme Court actually did adjudicate the constitutionality of the jury instructions on Petitioner's direct appeal, despite the fact that neither Petitioner's brief, nor the State Supreme Court's decision, makes any reference to any federal constitutional principles.

Petitioner next argues that the constitutional dimension of his jury instruction claim was fairly presented on direct appeal, (even though his brief did not mention any constitutional principle), because the guidelines for giving a lesser-included offense instruction are the same in both state and federal criminal cases. This argument fails because even if the same jury instruction guidelines are used in state and federal cases, that does not mean the applicable state law is synonymous with federal constitutional law.

Under Minnesota state law, "[t]he lesser-included offense instruction must be given if a reasonable basis exists for the jury to convict the defendant of the lesser-included offense and to acquit on the greater offense." Carney I, 649 N.W.2d at 460, citing State v. Leinweber, 303 Minn. 414, 422, 228 N.W.2d 120, 125-26 (Minn.1975). The constitutional requirements for lesser-included offense instructions – if any – are not so well-defined. Indeed, it appears highly doubtful that the Fourteenth Amendment's Due Process Clause mandates lesser-included offense instructions, in non-capital cases, under any circumstances. See Dickerson v. Dormire, 2 Fed.Appx. 695, 696 (8th Cir. 2001) (per curiam) (unpublished opinion) ("[t]he Supreme Court has never held that due process requires the giving of lesser-included-offense instructions in noncapital cases"); Green v. Groose, 959 F.2d 708, 709 (8th Cir. 1992) (per curiam) ("[w]hether there was sufficient evidence to support an involuntary manslaughter instruction under Missouri law is [a] matter

of state law...[;] 'any error committed by the trial court... in failing [properly to] instruct on [in]voluntary manslaughter does not present a constitutional question cognizable on federal habeas review'") (quoting Turner v. Armontrout, 922 F.2d 492, 494 (8th Cir. 1991)); Pitts v. Lockhart, 911 F.2d 109, 112 (8th Cir. 1990) ("the failure to give a lesser included offense instruction in a noncapital case rarely, if ever, presents a constitutional question"), cert. denied, 501 U.S. 1253 (1991).[5]

If lesser-included offense instructions are ever mandated by the Due Process Clause, (which, again, is a very dubious proposition, in light of the case law cited above), the nature of that mandate is not synonymous with Minnesota's state law requirements. Therefore, Petitioner did not preserve his current constitutional claim for federal habeas review simply by arguing to the Minnesota Supreme Court that a heat-of-passion manslaughter instruction was required under Minnesota law.[6]

### B. Petitioner's Ineffective Assistance of Counsel Claims

Respondent contends that Petitioner's ineffective assistance of counsel claims were procedurally defaulted, because he failed to raise those claims on direct appeal, and the Minnesota Supreme Court refused to address them on the merits in his post-conviction appeal, based on the Knaffla rule. See Clemons v. Luebbers, 381 F.3d 744, 750 (8th Cir.

---

[5] The opinions cited in the text, (Dickerson, Green, Turner and Pitts), obviously suggest that if Petitioner's jury instruction claim were not procedurally defaulted, it would fail on the merits.

[6] The Court also finds that Jackson v. Edwards, 404 F.3d 612 (2nd Cir. 2005), a case much touted by Petitioner, is not controlling here. In Jackson, the Court concluded that a habeas petitioner had fairly presented the constitutional basis for his jury instruction argument in the state courts, because the manner in which the state courts analyzed the argument applying state law was indistinguishable from the manner in which the federal court would analyze the argument applying due process principles. This Court cannot follow that reasoning here, because, as discussed in the text, the state law principles applied to Petitioner's jury instruction claim are not synonymous with the due process principles discussed in the relevant Eighth Circuit case law.

2004) ("[a] federal district court is precluded from substantively considering a habeas corpus claim that a state court has disposed of on independent and adequate non-federal grounds, including state procedural grounds"), cert. denied, 126 S.Ct. 41 (2005); Moss v. Lockhart, 971 F.2d 77, 81 (8th Cir. 1992) (same).  Petitioner disagrees, contending that the Knaffla rule is not applicable to his ineffective assistance of counsel claims.

If Petitioner is suggesting that the Minnesota Supreme Court misunderstood or misapplied the Knaffla rule, his argument is unavailing, because "[a] federal court may not re-examine a state court's interpretation and application of state law."  Schleeper v. Groose, 36 F.3d 735, 737 (8th Cir. 1994).  In Murray v. Hvass, 269 F.3d 896, 899 (8th Cir. 2001), cert. denied, 535 U.S. 935 (2002), the Eighth Circuit repeated that "it is not the province of a federal court to decide whether a matter ought to be considered procedurally defaulted under state law."

The same rule was followed in Owsley v. Bowers, 234 F.3d 1055, 1058 (8th Cir. 2000), cert. denied, 534 U.S. 903 (2001).  In that case, a state appellate court had ruled that a claim was not properly raised and preserved for direct appeal.  The prisoner-petitioner argued that the state court had made a mistake, but the Eighth Circuit rejected that argument, explaining that –

> "We are obliged to respect the conclusion of the Missouri Supreme Court here.  A federal court conducting habeas corpus review must ordinarily refrain from reviewing any issue that a state court has already found to be defaulted on an adequate and independent state-law basis."

Id. at 1058.

In May v. Iowa, 251 F.3d 713, 716 (8th Cir. 2001), the Court of Appeals once again rejected a habeas petitioner's challenge to the validity of a state procedural bar, pointing out that "[w]e may not disturb a state court decision interpreting state law on habeas

13

review... and thus we reject [the petitioner's] contention that he did not default his three ineffective assistance of counsel claims." See also Clemons, 381 F.3d at 751 ("federal courts do not look at whether state courts have correctly applied their own procedural rules[;] [t]hey simply determine whether those procedural rules were applied to bar the claim"). It is therefore clear that this Court cannot re-examine and reverse the Minnesota Supreme Court's determination that Petitioner's ineffective assistance of counsel claims were barred by the state's Knaffla rule.

Petitioner also contends that the State Supreme Court's application of the Knaffla rule should not preclude federal habeas corpus review of his ineffective assistance of counsel claims, because the rule is not a "firmly established precedent." (See Petitioner's "Memorandum In Support Of Petition [etc.]," [Docket No. 8], p. 46.) This argument is unsustainable, because, in fact, the Minnesota Supreme Court has repeatedly held that the Knaffla rule is applicable to ineffective assistance of counsel claims. See e.g, Henderson v. State, 675 N.W.2d 318, 323 (Minn. 2004); Ives v. State, 655 N.W.2d 633, 636 (Minn. 2003); Torres v. State, 688 N.W.2d 569, 572 (Minn. 2004), cert. denied, 125 S.Ct. 2309 (2005); Robinson v. State, 567 N.W.2d 491, 494 (Minn. 1997); Russell v. State, 562 N.W.2d 670, 673 (Minn. 1997); White v. State, 711 N.W.2d 106, 110 (Minn. 2006).

The well-established Knaffla rule includes some equally well-established exceptions. The Minnesota Supreme Court has consistently held that the Knaffla rule does not apply when additional fact-finding is required in order to properly evaluate an ineffective assistance of counsel claim. This exception, however, was not available to Petitioner, because the state courts concluded that no additional fact-finding was required in his case. See Carney II, 692 N.W.2d at 893 ("we conclude that the trial record and briefs clearly establish that no additional factfinding would have been required to decide [Petitioner's]

ineffective assistance of trial counsel claim, and that therefore the second <u>Knaffla</u> exception does not apply").[7] Petitioner undoubtedly believes that this conclusion by the state courts was erroneous. However, as the Court discussed above, a federal habeas court is not authorized to review a state court's application of a state procedural rule. Therefore, this Court cannot second-guess the Minnesota Supreme Court's determination that Petitioner's ineffective assistance of counsel claims are not subject to the additional fact-finding exception, (and those claims are therefore barred by the <u>Knaffla</u> rule).[8]

Petitioner also contends that it is neither reasonable nor prudent to apply the <u>Knaffla</u> rule to ineffective assistance of counsel claims. This argument is based on the Supreme Court's opinion in <u>Massaro v. United States</u>, 538 U.S. 500 (2003). In that case, the Court concluded that <u>in federal criminal cases</u> it is normally preferable to raise ineffective assistance of counsel claims in post-conviction collateral proceedings, rather than on direct appeal. However, as Petitioner has correctly recognized, <u>Massaro</u> was not decided on constitutional grounds, and state courts are therefore not bound to follow that decision. The Minnesota Supreme Court has acknowledged and considered the <u>Massaro</u> opinion, and has expressly elected <u>not</u> to follow it. <u>Torres</u>, 688 N.W.2d at 572 ("Because the ruling

---

[7] The first exception to the <u>Knaffla</u> rule noted in <u>Carney II</u> is "where a claim is so novel that the legal basis was not available on direct appeal." 692 N.W.2d at 891. Petitioner's ineffective assistance claim obviously is based on well-settled law, so he could not (and apparently did not) suggest this claim should have been considered under the first exception to the <u>Knaffla</u> rule. <u>Id</u>.

[8] When additional factfinding is necessary, the preferred procedure, under Minnesota case law, is to ask the state appellate court to stay the direct appeal, so that the defendant can raise his ineffective assistance claim in a post-conviction motion brought <u>before</u> the direct appeal is completed. See <u>Russell</u>, 562 N.W.2d at 673 ("when a postconviction hearing transcript is necessary to gain additional facts concerning the attorney's decisions, the best procedure is to raise the ineffective assistance of counsel claim in a petition for postconviction relief before the direct appeal"). Petitioner obviously did <u>not</u> follow that prescribed procedure.

15

in Massaro is based on the Supreme Court's supervisory power over federal courts and is not constitutional in nature, it does not bind us and we decline to adopt it. We believe that the Minnesota rule, first announced in Knaffla, is superior to the rule in Massaro.") Because Massaro does not impose any constitutional requirements, it does not require (or permit) this Court to strike down the state courts' continuing (post-Massaro) application of the Knaffla rule to ineffective assistance of counsel claims.

Finally, Petitioner contends that "[i]f Knaffla applies to procedurally bar the ineffective assistance claim, the rule will operate to rob indigent petitioners of the chance to protect their Sixth Amendment right to effective assistance of counsel at trial." ("Petitioner's Response To Respondent's Memorandum In Opposition Of Petition Under 28 U.S.C. § 2254," [Docket No. 15], p. 8.) In other words, (according to Petitioner), if the Knaffla rule prevents a prisoner from litigating his ineffective assistance of counsel claims, in both the state and federal courts, then the rule itself violates the prisoner's constitutional right to effective assistance of counsel. (See Petitioner's "Memorandum In Support Of Petition [etc.]," [Docket No. 8], pp. 42-45.) This argument must be summarily rejected, because it is a new challenge to the constitutionality of Petitioner's conviction, which has not been previously presented to, and decided on the merits by, the Minnesota Supreme Court. If Petitioner believes the state courts' application of the Knaffla rule deprived him of his Sixth Amendment right to counsel, he was required to first present that argument, as an independent claim for relief, to the Minnesota Supreme Court. Because no such argument was raised in Petitioner's post-conviction motion, it cannot be considered here.

### C. Cause and Prejudice

The only remaining issue to be resolved is whether Petitioner has shown cause and prejudice, or actual innocence, to excuse his procedural default. The Court finds that Petitioner is unable to satisfy either the cause and prejudice standard, or the actual innocence standard, with regard to either of his procedurally defaulted claims.

In order to satisfy the "cause" requirement, a prisoner must show that some external impediment prevented him from presenting his claims to the state's highest court in a timely and procedurally proper manner. Coleman, 501 U.S. at 753 ("'cause' under the cause and prejudice test is something *external* to the petitioner, something that cannot fairly be attributed to him... [f]or example, 'a showing that the factual or legal basis for a claim was not reasonably available... or that some interference by officials made compliance impracticable'"), (quoting Murray v. Carrier, 477 U.S. 478, 488 (1986)) (emphasis in the original). In this case, Petitioner has not identified any "external cause" that could excuse his failure to properly present his defaulted claims in the state courts. Indeed, Petitioner has made no discernible effort to show any legally sufficient cause to excuse his procedural default, and the Court cannot independently identify any such cause. Because Petitioner has failed to satisfy the cause component of the cause and prejudice requirement, it is unnecessary to discuss the prejudice component. Ashker v. Class, 152 F.3d 863, 871 (8th Cir. 1998) (when petitioner "has not shown adequate cause to overcome the procedural bar... we need not consider the issue of actual prejudice"); Sweet v. Delo, 125 F.3d 1144, 1151 (8th Cir. 1997), cert. denied, 523 U.S. 1010 (1998) (same).

Petitioner also does not qualify for the "actual innocence" exception, because he has offered no new evidence to affirmatively demonstrate that he did not commit the crime for which he was convicted. To qualify for the actual innocence exception, Petitioner would

have to present some compelling new evidence, which would conclusively establish that the original verdict simply could not be correct.  See Cox v. Burger, 398 F.3d 1025, 1031 (8th Cir.) (successful demonstrations of actual innocence are "rare and limited," because the actual innocence exception is "permitted only for 'truly persuasive demonstrations of actual innocence,' based on reliable new evidence which shows 'it is more likely than not that no reasonable juror would have convicted [the petitioner] in light of the new evidence'"), cert. denied, 126 S.Ct. 93 (2005) (citations omitted).  Petitioner has not presented any clear and convincing proof that, in fact, he did not commit the crime found by the jury.  Therefore, Petitioner's procedurally defaulted claims cannot be entertained under the actual innocence exception.

## III.  CONCLUSION

For the reasons discussed above, the Court concludes that Petitioner is not entitled to a writ of habeas corpus on either of the two claims for relief presented in his current petition.  Both of those claims have been procedurally defaulted, because they were not fairly presented to the Minnesota Supreme Court in a procedurally appropriate manner. Petitioner's current due process jury instruction claim has been defaulted, because that claim never has been fairly presented – as a federal constitutional claim – to the Minnesota Supreme Court; Petitioner's ineffective assistance of counsel claims have been procedurally defaulted, because the Minnesota Supreme Court held that those claims were procedurally barred pursuant to the State's well-established Knaffla rule.  Because Petitioner has not shown legally sufficient cause and prejudice to excuse his procedural default, and he has not presented any clear and convincing new evidence to prove he is actually innocent, his procedural default cannot be excused.  The Court will therefore recommend that this action be dismissed with prejudice.

## IV. RECOMMENDATION

Based on the foregoing, and all the files, records and proceedings herein,

**IT IS HEREBY RECOMMENDED** that:

1. Petitioner's application for habeas corpus relief under 28 U.S.C. § 2254, (Docket No. 1), be DENIED; and

2. This action be DISMISSED WITH PREJUDICE.

Dated: April 27, 2006

*s/ Janie S. Mayeron*
JANIE S. MAYERON
United States Magistrate Judge

Under D.Minn. LR 72.2(b) any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by **May 15, 2006**, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections. Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals. A party may respond to the objecting party's brief within ten days after service thereof. All briefs filed under this rule shall be limited to 3500 words. A judge shall make a de novo determination of those portions to which objection is made. This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable directly to the Circuit Court of Appeals.